**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 25 B 10323 |
| | ) | |
| ALICIA VILLEGAS, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Honorable Donald R. Cassling |

**MEMORANDUM OPINION GRANTING MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(4) (DOCKET NO. 18)**

This matter is before the Court on the motion of U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For RCF 2 Acquisition Trust (the "Bank") for *in rem* relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4). For the following reasons, the motion is granted.

On December 28, 2023, the Bank filed a foreclosure proceeding in the state court against Debtor, Alicia Villegas, and co-debtor, Alvaro Villegas, regarding real property located at 1836 South 49th Avenue, Cicero, Illinois (the "Property"). (Dkt. No. 18 at 3.) Co-debtor is Debtor's spouse. The Bank holds a mortgage on the Property in the amount of $280,000. (*Id.* at Ex. A.) The note and mortgage were signed by Debtor and her spouse on August 26, 2005. (*Id.*) The Bank filed the foreclosure proceeding because the loan was in default for the February 1, 2022, installment and onward. On April 19, 2024, a judgment of foreclosure was entered in favor of the Bank in that state court proceeding. (*Id.* at 4.) The Bank scheduled a foreclosure sale for October 28, 2024. (*Id.*) That foreclosure sale as well as two other ones were cancelled due to bankruptcy filings by Debtor and her spouse. (Reply at 2.)

Since the loan went into default, Debtor and her spouse have filed five Chapter 13 cases.[1] Four of those five cases have been dismissed. The first case filed by Debtor's spouse was on April 3, 2022. (22 B 03868). That case was dismissed on September 13, 2022, for failure to make plan payments. (*Id.*, Dkt. No. 38.) The next case was filed approximately two months later, on November 18, 2022, by Debtor's spouse (22 B 13407). That case was also dismissed on February 12, 2024, again for failure to make plan payments. (*Id.*, Dkt. No. 80.) Prior to this second dismissal, Debtor's spouse had entered into an agreed order with the Bank whereby he would be barred from refiling for two years if that case was dismissed for any reason. (*Id.*, Dkt. No. 46.) In violation of this agreed bar order, Debtor's spouse filed yet another bankruptcy case on May 12, 2024. (24 B 07043). That third case was dismissed on September 5, 2024, this time on the Trustee's motion for unreasonable delay. (*Id.*, Dkt. No. 39.) On October 22, 2024, Debtor's spouse filed yet another case (24 B 15773). This filing also violated the agreed bar order and was filed just six days prior to the foreclosure sale. Once again, the case was dismissed on January 23, 2025, for failure to make any payments. (*Id.*, Dkt. No. 39.) Significantly, the agreed bar order remains in effect until February 2026.

---

[1] Between the Debtor and her spouse, they have filed a total of twelve cases since 1984. (Debtor's cases: 11 B 47655, 13 B 35504, and 25 B 10323. Debtor's spouse's cases: 84 B 04585, 12 B 45939, 13 B 37658, 17 B 25544, 18 B 07174, 22 B 03868, 22 B 13407, 24 B 07043, and 24 B 15773). Eleven of those cases have been filed during the term of the mortgage with the Bank.

Perhaps finally deciding to abide by the agreed bar order, Debtor (instead of her barred spouse) filed this instant Chapter 13 case on July 7, 2025.  In response to the Bank's motion for *in rem* stay relief, Debtor argues that the motion should be denied because (a) she and her spouse are separated, (b) the only debt she has is the mortgage on the Property, (c) the Property is her homestead, (d) her proposed plan provides for one-hundred percent payment to the Bank, and (e) she has made three payments to the Bank since the filing of this case.

Debtor submitted an exhibit that purports to show that she and her spouse have paid just over $305,000 to the Chapter 13 Standing Trustee in seven of the twelve bankruptcy cases they have filed since 1984.[2]  (Resp. at Ex. A.)  Money paid to the Chapter 13 Trustee does not necessarily equate to money paid to the Bank, and Debtor has failed to state how much of that money went to the Bank.  While the Bank does not dispute that it has receive three payments from Debtor in this current case, it points out that aside from these payments, no other payments had been made for three and a half years.  (Reply at 2.)

Turning now to the analysis of these facts, a decision to modify the automatic stay pursuant to 11 U.S.C. § 362(d) is committed to the sound discretion of the bankruptcy court.  *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995).  "Hearings to determine whether the stay should be lifted are meant to be summary in character."  *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990).

The Bank seeks relief from the automatic stay under Section 362(d)(4).  The 2005 amendments to the Bankruptcy Code added this section, which provides bankruptcy judges statutory authority to grant *in rem* relief from the stay.  *In re Montalvo*, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009).  *In rem* relief is appropriate where an ordinary order granting stay relief will be ineffective to protect a secured creditor's rights.  *In re Mendiola*, 573 B.R. 758, 762 (Bankr. E.D. Wis. 2017).

The Bank has the burden of proof to establish a right to *in rem* relief.  *See In re Karpuleon*, No. 24-80647, 2024 WL 5011412, at *8 (Bankr. C.D. Ill. Dec. 6, 2024); *In re House*, No. 17-30434-BEH, 2018 WL 1505572, at *5 (Bankr. E.D. Wis. Mar. 26, 2018).  Once the Bank has made out a *prima facie* case, the ultimate burden of persuasion shifts to the party opposing the relief—here Debtor.  *See In re Garcia*, No. 22 B 130, 2022 WL 665825, at *5 (Bankr. N.D. Ill. Mar. 7, 2022).

Under Section 362(d)(4), the court does not actually order *in rem* relief as to real property.  Rather, if the court finds the elements of Section 362(d)(4) are met, the order containing that finding must be recorded "in compliance with applicable State laws governing notices of interests or liens in real property," 11 U.S.C. § 362(d)(4), and thereafter, by operation of Section 362(d)(4), *in rem* relief is applicable to the real property.  Absent further order of the court, there is no automatic stay that applies to the property if a bankruptcy case is commenced within the two years following the recording of the order.

In order for *in rem* stay relief to be granted under Section 362(d)(4), a secured creditor must satisfy two elements:  (1) proof that the debtor engaged in a scheme to delay, hinder, or defraud creditors, and (2) proof that the scheme involved . . . multiple bankruptcy filings. *Palladino v. HSBC Bank USA, N.A.*, 502 F.Supp.3d 1336, 1341 (N.D. Ill. 2020) (citing *In re Briggs*, No. 12 B 14853, 2012 WL 3780542, at *4 (Bankr. N.D. Ill. Aug. 31, 2012)).  Section

---

[2] See case numbers for these twelve cases listed in footnote 1.

362(d)(4) does not require a finding of fraud on the part of the debtor; the court only needs to find that "there was hindrance or delay to the Movant." *Briggs* 2012 WL 3780542 at *5.

It is undisputed that Debtor and her spouse have filed numerous cases over the years. Thus, the only element the Court must determine is whether these filings constitute a "scheme" to delay, hinder, or defraud creditors. The Code does not define the word "scheme," but some courts have defined it as "an intentional artful plot or plan." *Palladino*, 502 F.Supp.3d at 1341; *In re Spencer*, 531 B.R. 208, 217 (Bankr. W.D. Wis. 2015). One court has rejected this dictionary definition of "scheme" and utilized the definition from the Seventh Circuit's pattern jury instructions: "a plan or course of action formed with the intent to accomplish some purpose . . . that purpose must be to delay, hinder, or defraud creditors." *Karpuleon*, 2024 WL 5011412, at *5.

Courts have relied on several factors in determining whether a debtor engaged in a "scheme" to hinder, delay, or defraud creditors: (1) the presence of numerous bankruptcy filings by debtor, each of which case was procedurally dismissed shortly thereafter; (2) indications that the multiple filings were timed to hinder or delay collection of the debt through foreclosure; (3) lack of evidence to demonstrate changed circumstances between filings; (4) continued inability to fund a plan; (5) the debtor's failure to make mortgage payments for a long period of time; and (6) employment by co-debtors of "tag-team" serial filings. *House*, 2018 WL 1505572, at *5; *Garcia*, 2022 WL 665825, at *5; *Briggs*, 2012 WL 3780542, at *5. "'Strategic' bankruptcy filings timed to coincide with events in a related foreclosure action strongly suggest a scheme to hinder or delay the secured creditor." *Garcia*, 2022 WL 665825, at *6 (citations omitted).

Each one of these boxes has been checked in this case. Under either definition of the word "scheme," and after review of the above-cited factors, the Court finds that Debtor filed this bankruptcy petition as part of a scheme to delay or hinder the Bank. That scheme involved multiple filings by Debtor and her spouse. The timing of at least the past five cases filed between them clearly establishes that the petitions were intended to delay the foreclosure proceeding. In fact, the Bank has had to cancel three foreclosure sales due to these bankruptcy filings. (Reply at 2.)

Debtor and her spouse initially defaulted on the terms of the note and mortgage on February 1, 2022. Since that default, they have filed five cases between them and have repeatedly defaulted and failed to make payments to the Bank for a sustained period during those cases. *See In re Syverson*, 638 B.R. 765, 768 (Bankr. E.D. Wis. 2022). Debtor only made three payments to the Bank in this current case. No other payments have been made to the Bank for over three years. The Bank states that since the $280,000 loan was made in 2005, the payoff amount twenty years later has grown to $483,621. (Reply at 2.)

Debtor's reliance upon her separation from her spouse does not alter the analysis or "uncheck" any of the boxes indicating that she has participated in a scheme to hinder and delay the Bank from foreclosing on its collateral. Indeed, Debtor has not provided any relevant evidence that comes close to rebutting the Bank's *prima facie* case. Thus, the Court finds that the Bank has shown that Debtor has hindered and delayed the Bank because of these multiple bankruptcy filings.

For the foregoing reasons, the Court grants the Bank's motion for *in rem* stay relief under Section 362(d)(4) against the Property.  A separate order will be entered in accordance with this decision.

**ENTERED:**

**DATE:** September 25, 2025

**Donald R. Cassling**
**United States Bankruptcy Judge**